UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

CHRISTOPHER KNECHT,

    Plaintiff,

vs.

CITY OF CINCINNATI, OHIO, et al.,

    Defendants.

Civil Action No.1:12-cv-763

Black, J.
Bowman, M.J.

## REPORT AND RECOMMENDATION

This civil action is now before the Court on Defendant's motion for summary judgment (Doc. 76) and the parties' responsive and supporting memoranda (Docs. 79, 82, 83, 84). Also before the Court are Defendant's proposed undisputed findings of fact and Plaintiff's response thereto. (Docs. 77, 81). For the reasons outlined below, the undersigned herein recommends that Defendant's motion be granted.

### I. Background and Facts

Plaintiff filed this case in October 2012 against both the City of Cincinnati ("City") and City Employee Margo Springs. Plaintiff contends that the City violated his procedural due process rights by disseminating inaccurate information about his criminal background through its Regional Crime Information Center (RCIC) database.

The undisputed facts are as follows:

Mr. Knecht recently graduated with his associate's degree from Cincinnati State. He lives with his partner and their two children in Cincinnati. Mr. Knecht currently works for a temporary employment agency processing IRS returns.

In March 1987, Plaintiff was found guilty of aggravated burglary and theft in

violation of Ohio Revised Code §§ 2911.11 and 2913.027. Mr. Knecht's initial sentence was suspended, but after a parole violation, he was sent to prison for 12 years. (Doc. 74, Knecht Dep. at p. 14, 22). Upon his release from prison in 1999, Mr. Knecht accrued parole violations for smoking marijuana, missing appointments with his parole officer, and leaving the state without permission. *Id.* at 7-8, 12. He has also struggled to secure employment, housing and social services. Since at least 2006, Mr. Knecht has questioned these challenges and whether they were caused by inaccuracies in his criminal records. (Kneckt Dep at pp.17-19, 38-40, 50, 58-59).

Namely, in 2006, Plaintiff and his girlfriend applied to rent an apartment located on Winton Road in Cincinnati, Ohio. According to Plaintiff, the property manager denied their application because Plaintiff's background check indicated that he had been to prison for "harming someone." (Knecht Dep. at 38-39). That same year, Plaintiff claims that a church in Kentucky denied him emergency housing because of his alleged violent history. (Knecht Dep. 57).

In 2007, Mr. Knecht applied for a job with Kerry Ford Automotive. He was told he was denied the job because the background check that Kerry Ford commissioned from ChoicePoint Workplace Solutions contained information from the Ohio Department of Corrections reflecting a conviction for two aggravated burglaries and two thefts. (Knecht dep. at 17-19, 20-21). Because of the inaccurate information in his criminal history, in 2007 Mr. Knecht went to the Hamilton County Clerk of Courts and had them correct his records to reflect that he only had two felony convictions – one for theft and one for aggravated burglary. (Knecht Dep. 19).

However, it appears that the Clerk of Courts did not fully update Mr. Knecht's

records. On June 6, 2012, Plaintiff went to the Hamilton County Sheriff's office to get a copy of his criminal history. (Doc. 74 Knecht Dep. at 24-25). The sheriff's office queried Mr. Knecht's criminal records on the City's Regional Crime Information Center (RCIC) database. (Doc. 79, O'Neill Aff. ¶ 38, Ex. C).

The RCIC is a division of the City of Cincinnati's Enterprise Technology Solutions (ETS) Department. RCIC is also sometimes referred to as County Law Enforcement Applied Regionally (CLEAR). The City is the operating agent for the RCIC database, which is a central repository for data-sharing among law enforcement agencies (LEA's) in Hamilton County. (O'Neill Aff. ¶6). RCIC provides computerized records management systems to the 50+ law enforcement agencies operating in Hamilton County.

The report that Plaintiff received indicated that he had been convicted of three felonies – one for theft, one for aggravated burglary, and one for aggravated burglary with intent to inflict harm. As detailed above, however, Plaintiff was convicted only of theft and aggravated burglary. As a result of this inaccuracy, he contacted Peggy O'Neill at the City's ETS Department and told her about the record inaccuracy. (Knecht Dep. p. 26). In response to Plaintiff's inquiry, Ms. O'Neill contacted the Hamilton County Clerk of Courts to verify whether there was a problem and instructed them to update his records, if necessary. (O'Neill Aff., ¶ 35).

Several days later, on June 11, 2012, Ms. O'Neill checked the RCIC database and confirmed that the updates to Mr. Knecht's records had been submitted by the Clerk's office. *Id.* at ¶36. The RCIC database and synchronization logs showed that Mr. Knecht's records were updated by the Clerk to change the disposition and charge

description. Specifically, it now accurately showed Mr. Knecht's felony convictions for theft and aggravated burglary (without intent to inflict harm). *Id.* Ms. O'Neill contacted Mr. Knecht and notified him that his records had been updated based on a data submission from the Clerk's office. She also contacted the Sheriff's office and made arrangements for Mr. Knecht to get a revised background check for no charge. Several months passed. On October 5, 2012, Mr. Knecht returned to the sheriff's office and procured his updated criminal background check, which reflected the changes entered by the Clerk to correct his records. (Knecht Dep., p. 27).

At some point between June and October 2015, Mr. Knecht had a "light bulb moment" and concluded that the inaccurate criminal history report that he received in June 2012 provided the explanation for his troubles over the years in securing housing, employment and social services. Thereafter, Plaintiff commenced the instant action in October 2012. In February 2013, Plaintiff filed an Amended Complaint to assert a claim of §1983 that the City has violated Mr. Knecht's Procedural Due Process Rights.

Thereafter, the undersigned issued a report and recommendation ("R&R") to dismiss the Amended Complaint based upon a failure to state a claim for relief. However, Judge Spiegel overruled the R&R on the basis that "Plaintiff has pleaded a plausible theory that Defendants' dissemination of false information violated his liberty interests in seeking employment, housing and social services … it is entirely plausible that the City's dissemination of the false information … played a part in [his difficulties securing employment, housing and social services]." (Doc. 40). In April 2015, Defendant Margo Springs was dismissed as a party to this action at Mr. Knecht's request. (Doc. 70).

The City now moves for summary judgment asserting that it is entitled to judgment as a matter of law because the City is not responsible for any error with Plaintiff's criminal record, nor did he suffer any harm as a result of the City's actions or inactions.[1] Plaintiff, however, claims that his Due Process rights were violated based on his failure to receive notice and a hearing before adverse action was taken against him as it relates to the criminal records practices by the City. For the reasons explained below, the undersigned finds that the City's motion for summary judgment is well-taken.

II. Analysis

A. Standard of Review

A motion for summary judgment should be granted if the evidence submitted to the court demonstrates that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). The moving party must demonstrate the absence of genuine disputes over facts which, under the substantive law governing the issue, could affect the outcome of the action. *Celotex Corp.*, 477 U.S. at 323.

In response to a properly supported summary judgment motion, the non-moving party "'is required to present some significant probative evidence which makes it necessary to resolve the parties' differing versions of the dispute at trial.'" *Harris v.*

---

[1] The City also asserts that Plaintiff's amended complaint is time-barred. Notably, Section 1983 actions must be brought within two years of any violation. *Banks v. City of Whitehall*, 344 F.3d 550 (6th Cir. 2003). The two year statute of limitations begins when a plaintiff either knew or should have known enough facts to trigger further inquiry. *Bowden v. City of Franklin*, 13 F. App'x 266, 271 (6th Cir. 2001). Plaintiff knew that there were problems with his criminal records and related inaccuracies in 2006, 2007 and 2008. As such, Defendant contends the two-year limitations period for his § 1983 claim expired, at the latest, in 2010. Yet, he did not file this action until 2012. Accordingly, Defendant asserts that Plaintiff's due process claim should be dismiss as untimely. Nonetheless, in light of the Sixth's Circuit's strong preference for trial on the merits and in the interest of justice, the undersigned will consider the arguments raised in Defendant's motion for summary judgment on the merits.

5

*Adams*, 873 F.2d 929, 931 (6th Cir. 1989) (quoting *Sixty Ivy Street Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir. 1987)). The Court must evaluate the evidence, and all inferences drawn therefrom, in the light most favorable to the non-moving party. *Matsushita Elec. Industrial Co., Ltd. v. Zenith Radio*, 475 U.S. 574, 587 (1986); *Satterfield v. Tennessee,* 295 F.3d 611, 615 (6th Cir. 2002); *Little Caesar Enterprises, Inc. v. OPPC, LLC*, 219 F.3d 547, 551 (6th Cir. 2000).

If, after an appropriate time for discovery, the opposing party is unable to demonstrate a prima facie case, summary judgment is warranted. *Street*, 886 F.2d at 1478 (citing *Celotex* and *Anderson*). A principal purpose of summary judgment is to isolate and dispose of factually unsupported claims or defenses. *Celotex,* 477 U.S. at 323-24. The moving party need not support its motion with evidence disproving the opposing party's claims. Rather, the moving party need only point out there is an absence of evidence supporting such claims. *Hartsel v. Keys,* 87 F.3d 795, 799 (6th Cir. 1996) (citing *Celotex Corp.,* 477 U.S. at 325). Nor must the Court search the entire record for material issues of fact. *Street*, 886 F.2d at 1479-80. The court need only determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

### B. Procedural Due Process

To state a colorable claim under 42 U.S.C. § 1983, a plaintiff must allege (1) a

deprivation of rights secured by the Constitution and laws of the United States and (2) that "the deprivation was caused by a person acting under color of state law." *Tahfs v. Proctor,* 316 F.3d 584, 590 (6th Cir.2002) (citations omitted).  Here, Plaintiff alleges that his Due Process rights were violated based on his failure to receive notice and a hearing before adverse action was taken against him as it relates to the criminal records practices by the City. (Doc. 14., ¶43).

The Fourteenth Amendment provides that a state may not "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV. In addition to setting the procedural minimum for deprivations of life, liberty, or property, the Due Process Clause bars "certain government actions regardless of the fairness of the procedures used to implement them." *Daniels v. Williams,* 474 U.S. 327, 331 (1986). It does not prohibit every deprivation by the state of a person's life, liberty or property. *Harris v. City of Akron,* 20 F.3d 1396, 1401 (6th Cir.1994). Only those deprivations which are conducted without due process are subject to suit under 42 U.S.C. § 1983. *Id.*

"To establish a procedural due process claim, a plaintiff must show that (1) it had a life, liberty, or property interest protected by the Due Process Clause; (2) it was deprived of this protected interest; and (3) the state did not afford it adequate procedural rights." *Daily Servs., LLC v. Valentino*, 756 F.3d 893, 904 (6th Cir. 2014) (citing *Women's Med. Prof'l Corp. v. Baird*, 438 F.3d 595, 611 (6th Cir. 2006)). "Although property rights are principally created by state law, 'whether a substantive interest created by the state rises to the level of a constitutionally protected property interest is a question of federal constitutional law.'" *Waeschle v. Dragovic*, 576 F.3d 539, 544 (6th Cir. 2009) (quoting *Whaley v. County of Tuscola*, 58 F.3d 1111, 1114 (6th Cir.1995)).

1. *Protected Property right*

With respect to the first element, constitutionally protected property interests "are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." *Board of Regents v. Roth*, 408 U.S. 564, 576-78 (1972). In order for Plaintiff to show a property interest in accurate criminal records, he must allege facts that show that he has a legitimate claim of entitlement to it, not just a unilateral expectation of it. *Id*. at 577.

Plaintiff asserts that he has "a constitutional right to have ... erroneous information expunged from his institutional files." (Doc. 82) (citing *Paine v. Baker*, 595 F.2d 197 (4th Cir.), cert. denied, 444 U.S. 925, 100 S.Ct. 263, 62 L.Ed.2d 181 (1979), and *McCrery v. Mark*, 823 F.Supp. 288. Notably, in *Paine*, the Fourth Circuit Court of Appeals recognized a limited right to have erroneous information deleted from a petitioner's file when an inmate alleges: (1) that certain information is in the file; (2) that the information is false; and (3) that it was relied on to a constitutionally significant degree. *Paine v. Baker*, 595 F.2d 197, 201 (4th Cir. 1979).

However, upon its review of *Paine*, the Sixth Circuit stated that "[a] person may state a constitutional claim if [a government agency] disseminates false information, after a proper request for correction has been made, and the false information is used to deprive the person of liberty." *Pruett v. Levi,* 622 F.2d 256 (6th Cir.1980) (per curiam). Yet, "the mere retention of inaccurate information in an inmate's file does not amount to a constitutional violation*." Id. at* 258. *Pruett* has primarily been cited in district courts within the Sixth Circuit to deny relief on the basis that a prisoner who claims that an

8

error in his record prejudiced his parole review does not state a cognizable claim, unless the relevant state system creates a liberty interest in parole. *See, e.g., Taylor v. Graves,* No. 2:12–cv–144, 2012 WL 1577235, at *4 (W.D.Mich. May 3, 2012) (finding that, because the plaintiff had no liberty interest in parole under Michigan law, he failed to state a due-process claim based on an error in his correctional record); *Buckines v. Mich. Parole Bd.,* No. 1:08–cv–17, 2008 WL 696438, at *1 (W.D.Mich. March 12, 2008) (same).

Here, the City contends that Plaintiff has no constitutional property interest in accurate criminal records, and as such, his due process claim fails. Notably, the undersigned has been unable to find any case law that clearly establishes a constitutional property or liberty right to accurate criminal records. However, in an abundance of caution and in the interests of justice, the undersigned finds that Plaintiff *may* have a protected property interest in the dissemination of false criminal history, and will therefore proceed to the next element of the due process violation analysis, a deprivation of that interest within the meaning of the due process clause.

  2. *Deprivation of a Constitutionally Protected Interest*

As noted above, an individual is only entitled to procedural due process when he has suffered a deprivation of a constitutionally protected liberty or property interest. *Board of Regents v. Roth,* 408 U.S. 564, 569 (1972). Plaintiff argues that this case is about the deprivation of his liberty interest to housing, employment and other opportunities. However, Plaintiff has not provided sufficient evidence establishing a genuine issue of fact as to any constitutional deprivations.

Notably, Plaintiff contends that he was denied rental housing based on his time

9

"in prison for harming someone". In support of this assertion, Plaintiff's affidavit states in relevant part:

> Michelle Schroder told me that the property manager of the now defunct Kings Court Apartments, located at 4880 Winton Road, Cincinnati, Ohio 45232, was not going to rent to either of us because I had been to prison for harming someone;
>
> When Michael Schroeder informed me that we were not going to be able to rent the apartment mentioned above, I called the property manager and explained that I had not been to prison for harming any person to no avail;
>
> I eventually met up with the property manager mentioned herein above who returned my security deposit minus the application fee of $25.00. I again informed the property manager that I was not in prison for harming anyone;
>
> While retrieving my security deposit, the property manager again informed me that a background check conducted by him indicated that I was in prison for harming someone.

(Doc. 82, Knecht Aff. ¶¶).[2]

Such evidence, however, does not create a genuine issue of material fact establishing that Plaintiff was deprived of a constitutionally protected interest. Notably, with regard to affidavits, Rule 56(e) requires that affidavits submitted in support of, or in opposition to, motions for summary judgment include facts based on personal knowledge, and that personal knowledge "must be evident from the affidavit." *Reddy v. Good Samaritan Hosp. & Health Ctr.,* 137 F.Supp.2d 948, 956 (S.D.Ohio 2000). Affidavits at the summary judgment stage may not rely upon inadmissible hearsay because inadmissible hearsay "cannot create a genuine issue of material fact." *North*

---

[2] Plaintiff's affidavit also cites to a number media articles about Cincinnati police officers misusing criminal data from the RCIC database. (Doc. 82, Knecht Aff. ). As noted by Defendant, the newspaper articles, absent other corroborating documents, are inadmissible hearsay. *Turner v. City of Taylor*, 412 F.3d 629, 651-652, 2005 U.S. App. LEXIS 11233, *56-57, 2005 FED App. 0262P (6th Cir.), 18 (6th Cir. Mich. 2005). More importantly, such articles fail to establish any deprivation of Plaintiff's constitutional rights by the City of Cincinnati.

*American Specialty Ins. Co. v. Myers,* 111 F.3d 1273, 1283 (6th Cir.1997). Self-serving affidavits, alone, are not enough to create an issue of fact sufficient to survive summary judgment. *Wolfe v. Vill. of Brice, Ohio,* 37 F.Supp.2d 1021, 1026 (S.D. Ohio 1999). *See Anderson,* 477 U.S. at 251, 106 S.Ct. 2505; *Copeland,* 57 F.3d at 479.

Here, as noted by Defendant, Plaintiff has not alleged any admissible facts sufficient to raise harm beyond the speculative level. Plaintiff has not offered any affidavits or other sworn testimony from Michelle Schroeder and/or the alleged landlord who rejected his rental application.[3]

To the contrary, Plaintiff's RCIC transaction log reflects that the City never disseminated inaccurate information from its RCIC database to his detriment. (O'Neill Aff., ¶¶ 38-40). In this regard, when Plaintiff was denied employment with Kerry Automotive based on inaccurate criminal records, the source of the inaccurate information was the Ohio Department of Corrections and the Clerk of Courts, not the City. (Knecht Dep. p. 17-18, Exs. B-1, B-2).

Moreover, it is also undisputed that no data from the RCIC database was released to anyone other than Mr. Knecht and the city employee investigating his complaints. From 2004 through present, criminal background checks for Mr. Knecht were only pulled 5 times from the RCIC database. (O'Neill Aff., ¶ 39). Those five queries of his records from the RCIC database were initiated by two people: Mr. Knecht and Ms. O'Neill.

On June 6, 2012 and October 5, 2012, the records were pulled by the sheriff's office at Mr. Knecht's request. The other three times were in June 2012, by Peggy

---

[3] Plaintiff has filed a motion to reopen discovery (Doc. 85) claiming to have located the prospective property manager. Plaintiff's motion is not well-taken and will be addressed in a separate order.

11

O'Neill at the City, in the course of her investigation into Mr. Knecht's complaint and subsequent verification that his criminal records had been updated through the clerk of courts' CMS database which synched into the RCIC database. *Id.* at ¶ 39.

For these reasons, Plaintiff has not alleged any admissive facts to establish that the City deprived him of his constitutional rights.

### 3. Adequate Remedy

Last, assuming arguendo, that Plaintiff has established the first two elements of a due process claim, Plaintiff cannot establish the third element. Notably, upon the discovery of the inaccuracies of his criminal records in the RCIC database, he was provided a remedy, his record was corrected. As noted by Defendant, it is the entering agency (i.e. the LEA or Clerk) that is responsible for fixing data errors relating to criminal records, not the City. (O'Neill Aff., ¶¶ 22, 34, 45). In any event, City employee Peggy O'Neill contacted the Clerk's office and made arrangements for them to fix their error. *Id.* at ¶ 35-36. Within several days, the RCIC database reflected an update in Mr. Knecht's records from the clerk's office, an update which deleted his inaccurate felony conviction.

### C. Government Liability

Additionally, A municipality cannot be held vicariously liable under § 1983 based on the theory of *respondeat superior* for injuries inflicted solely by its employees or agents. *See Iqbal,* 556 U.S. at 677; *Monell v. New York City Dep't of Soc. Services,* 436 U.S. 658, 690–92, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978); *Gregory v. Shelby Cnty., Tennessee,* 220 F.3d 433, 441 (6th Cir.2000); *see also Davis, supra,* 2009 WL 414269, at *2 ("A plaintiff may not rely on the doctrine of *respondeat superior* to find a

government entity liable under § 1983 when the claim is founded solely on an allegation that its agent caused the injury."). Thus, Under *Monell,* in order for the City to be liable, it must have deprived Mr. Knecht of his civil rights through an unconstitutional policy or custom.

Assuming that the City could change the substance of data entered into the RCIC database by LEA's and the Clerk, there is no evidence that the City has a policy, practice or custom of maintaining or disseminating inaccurate criminal records. There are four ways to establish a municipality's illegal policy or custom: (1) legislative enactments or official agency policies; (2) actions taken by officials with final decision-making authority; (3) inadequate training or supervision; and (4) a custom of tolerance or acquiescence of civil rights violations. *Spears v. Ruth*, 589 F.3d 249, 256 (6th Cir. 2009)(quoting *Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005)). Plaintiff has failed to allege any admissible facts that would establish any of the four scenarios outlined above.

### III. Conclusion

For these reasons, the undersigned finds that Defendant is entitled to judgment as a matter of law and it is therefore **RECOMMENDED** that Defendant's motion for summary judgment (Doc. 76) be **GRANTED**, and this matter be **TERMINATED** on the active docket of the Court.

    *s/Stephanie K. Bowman*
Stephanie K. Bowman
United States Magistrate Judge

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

CHRISTOPHER KNECHT,

    Plaintiff,                                  Civil Action No.1:12-cv-763

    vs.                                          Black, J.
                                                 Bowman, M.J.

CITY OF CINCINNATI, OHIO, et al.,

    Defendants.

**NOTICE**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to this Report & Recommendation ("R&R") within **14 DAYS** of the filing date of this R&R. That period may be extended further by the Court on timely motion by either side for an extension of time. All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections. A party shall respond to an opponent's objections within **14 DAYS** after being served with a copy of those objections. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).